UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | * | |
| | * | |
| v. | * | |
| | * | Case No. 1:14-cr-10297-IT |
| DUANE GOMEZ, a/k/a "GO-GO," | * | |
| a/k/a "G", | * | |
| Defendant. | * | |
| | * | |

<u>MEMORANDUM & ORDER</u>

April 21, 2020

TALWANI, D.J.

In 2015, Duane Gomez pleaded guilty to one count of conspiracy to distribute heroin, pursuant to 21 U.S.C. §§ 846, 841(a)(1), 841(b)(1)(B)(i), in accordance with his plea agreement under Fed. R. Crim. P. 11(c)(1)(C). Plea Agreement [#66]; Elec. Clerk Notes [#80]. He was sentenced to 87 months incarceration, the term recommended by the parties as negotiated in his plea agreement. Judgment [#81]. Now before the court are various motions relating to that sentencing and seeking representation. For the reasons set forth below, Gomez's <u>Motion to Amend/Correct PSR; Motion to Appoint Pro Bono Counsel for New Civil Case</u> ("Motion to Amend PSR" and "Motion to Appoint Counsel") [#106], <u>Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody</u> ("Motion to Vacate") [#110], and <u>Motion for Reconsideration for Appointment of Counsel</u> [#133] are DENIED.

I.    <u>Background</u>

In 2006 and 2007, Gomez was charged in state court with a series of crimes, including two charges of assault and battery on a police officer ("ABPO"), one charge of assault and battery with a dangerous weapon ("ABDW"), and two charges of possession with intent to

distribute cocaine. Presentence Report ("PSR") at 24-28. In 2007, Gomez pleaded guilty to all outstanding charges in a package plea deal.

In 2012, an internal investigation at the Hinton Drug Lab revealed that chemist Annie Dookhan was tampering with substances she was testing for the presence of illegal drugs. See Bridgeman v. Dist. Attorney for Suffolk Dist., 476 Mass. 298 (2017). Dookhan had tested evidence relating to two of Gomez's 2007 convictions. Sweeney Aff. ¶ 3 [#123-1].

Gomez was indicted here in 2014. By that time, Dookhan's misconduct was known, but neither of Gomez's 2007 drug convictions had been vacated.[1] Gomez's attorney, Joshua Hanye, investigated the possibility of vacating Gomez's earlier convictions and discussed that possibility with Gomez. Hanye Aff. ¶¶ 9, 12-16 [#122].

In 2015, Gomez and the government executed a binding plea agreement pursuant to Fed. R. Crim. P. 11(c)(1)(C). Plea Agreement [#66]. Pursuant to the plea agreement, Gomez admitted to the drug conspiracy charged and admitted further that the conspiracy involved at least 100 grams of heroin and that at least 100 grams of heroin were attributable to, and reasonably foreseeable by, Gomez. The parties agreed that under the United States Sentencing Guidelines (USSG) § 2D1.1(c)(8), he had a base offense level of 24 based on the drug quantity. Plea Agreement [#66] at 2.[2] However, the parties "recognize[d] that the defendant may be classified as a career offender pursuant to USSG § 4B1.1 . . ., with a corresponding base level of 34." Id.[3]

---

[1] An earlier set of convictions, not at issue here, had been vacated due to Dookhan's misconduct. PSR ¶ 110.

[2] The 2014 United States Sentencing Guidelines Manual was the operative set of guidelines at the time of Gomez's sentencing.

[3] According to the United States Sentencing Guidelines, "a defendant is a career offender if…the instant offense of conviction is a felony that is…a controlled substance offense; and…the defendant has at least two prior felony convictions of either a crime of violence or a controlled substance offense." USSG § 4B1.1(a). If a defendant is a career offender and the offense's

Therefore, at the time of his plea, the parties recognized that if Gomez was determined to be a career offender, his offense level was 31.

Under the binding plea agreement, the government and defendant agreed that incarceration for 87 months, supervised release of 48 months, a $100 special assessment and forfeiture as set forth in the agreement were a reasonable and appropriate disposition of the case. Plea Agreement [#66] at 3-4. Defendant also waived his right to appeal and to bring future challenges to the conviction and sentence. Id. at 4-5. On June 23, 2015, Defendant entered a guilty plea pursuant to Fed. R. Crim. Proc. 11(c)(1)(C).

The Probation Office determined that Gomez qualified as a career offender because of two of his 2007 convictions. PSR at 30, ¶ 91.[4] Probation further found that Gomez's criminal history resulted in a subtotal criminal history score of 28. Fourteen of those 28 points were from the 2007 guilty plea. PSR at 24-28; see also PSR at 30, ¶ 89. Probation also found that Gomez "committed the instant offense while under a criminal justice sentence" and, pursuant to USSG § 4A1.1(d), increased his criminal history score to 30, placing Gomez in criminal history category VI. Gomez's status as a career offender also, independently, placed him in criminal history category VI. USSG § 4B1.1(b).

---

statutory maximum penalty is 25 years or more, as was the case with the crime of conviction here, the offense level becomes 34. USSG § 4B1.1(b)(2).

[4] Probation also noted that additional convictions from the 2007 plea agreement "may" have qualified as career offender predicates, but Probation did not reach that issue because of its findings that other 2007 convictions qualified as predicates. Id. at 30 n.1. The Defendant objected to a finding that these additional convictions were career offender predicates. The court did not resolve the objection because it was not necessary, in light of Probation basing its career offender findings on other convictions. Hr'g Tr. (Sept. 24, 2015) at 4:14-21 [#108]. Probation also found a two-level increase for obstruction of justice was appropriate, pursuant to USSG § 3C1.1, but the court allowed Defendant's objection to this increase. Id. at 4:4-8.

With an offense level of 31 and a criminal history category of VI, the sentencing guidelines at the time of Gomez's sentencing set his sentence range at 188 to 235 months. Statement of Reasons [#81] at 8. Without the Career Offender enhancement, Gomez would have had an offense level of 21, a criminal history category VI, and a sentencing range of 77 to 96 months. See USSG Sentencing Table (2014).

On September 24, 2015, the court accepted the agreed-upon disposition and sentenced Gomez accordingly, specifically rejecting the higher guideline range based on the Career Offender enhancement. See Hr'g Tr. (Sept. 24, 2015) at 16:20-17:9 [#108]; Statement of Reasons [#81] at 9.

In August 2016, Gomez filed a motion in state court to withdraw his guilty plea in the 2007 cases. Sweeney Aff. ¶ 3 [#123-1]. In 2017, while this motion was pending, the Supreme Judicial Court ordered local district attorneys to determine the disposition of cases affected by Dookhan's misconduct, including creating a list of charges that would be dismissed and those that could be retried. Bridgeman, 476 Mass. at 327-32. Following that decision, two of Gomez's 2007 state convictions were dismissed with prejudice. Gov's Ex. 4 - Gomez Docket at 4 [#123-4]. Initially, the state court denied Gomez's motion to vacate his remaining 2007 convictions. Id. At the same time, the court allowed a motion Gomez had filed for the return of property forfeited in connection with the now-vacated offenses. Id. In response, the Commonwealth offered to vacate all of the outstanding 2007 convictions in return for Gomez's withdrawal of his motion for the return of forfeited money. Sweeney Aff. ¶ 9 [#123-1]. Gomez accepted this offer and the remainder of his 2007 state convictions were vacated on November 2, 2017. Id. ¶ 10.

Gomez returned to this court and filed the various pending motions, which the government has opposed. The court addresses each motion in turn.

I.     <u>Motion to Amend PSR</u> [#106]

Gomez seeks amendment of his PSR to reflect that the 2007 state convictions have now been vacated. Motion [#106]. He asserts that the PSR affects his custody level at the Bureau of Prisons and the programs available to him. <u>Id.</u> Fed. R. Crim. P. 32 governs revisions of PSRs but does not provide a mechanism for post-sentence corrections. <u>United States v. Angiulo</u>, 57 F.3d 38, 41 (1st Cir. 1995); <u>Golden v. Sabol</u>, 575 F.Supp. 2d 280, 285 (D. Mass. 2008). While the government suggests that a PSR may be changed under Fed. R. Crim. P. 35 after a sentence has been imposed, a motion to correct a sentence under that section must be filed within 14 days from sentencing. Fed. R. Crim. P. 35(a). Gomez filed his Motion to Amend PSR more than 2 years after sentencing. Accordingly, the PSR may no longer be revised under Rule 35.

II.     <u>Motion to Appoint Pro Bono Counsel</u> [#106]

Gomez also requests appointment of pro bono counsel for a civil action that he seeks to initiate against the government. Gomez included no explanation of the matter at issue, except that it was "against the DEA or Government regarding this matter." There is, however, no mandate that a court request pro bono counsel in such cases. <u>See</u> <u>DesRosiers v. Moran</u>, 949 F.2d 15, 23 (1st Cir. 1991). Before seeking pro bono counsel for a person who is unable to afford counsel, the court considers whether exceptional circumstances exist such that the denial of counsel will result in fundamental unfairness impinging upon the party's due process rights. Here, Gomez does not identify any exceptional circumstances warranting this court to seek pro bono counsel.

III.     <u>Motion to Vacate under 28 U.S.C. § 2255</u> [#110]

 *A.  Timeliness*

The government argues that Gomez's Motion to Vacate must be denied because it was not timely filed. Opp'n to Def.'s Mot. to Vacate Sentence 10 [#123].

Under 28 U.S.C. § 2255(f)(4), a petition is timely filed if it is filed within one year of "[t]he date on which the facts supporting the claim or claims presented could have been discovered through the exercise of due diligence." When a petitioner claims ineffective assistance of counsel that hinges on the vacatur of prior convictions, as Gomez does here, the date that vacatur occurred is a "matter of fact" for the purposes of 28 U.S.C. § 2255(f)(4), and, therefore, the petitioner has one year to file a petition from the date he received notice of vacatur, provided the defendant sought the vacatur with "due diligence." <u>Johnson v. United States</u>, 544 U.S. 295, 302, 308-09 (2005).

Here Gomez filed his petition in this court less than five months after the state convictions were vacated. The government contends, however, that Gomez failed to seek that vacatur with due diligence. Due diligence requires "prompt action" by the petitioner as soon as he is in a position to "realize that he has an interest in challenging the prior conviction." <u>Johnson</u>, 544 U.S. at 308 (barring action where petitioner knew that state convictions subjected him to career offender enhancement but failed to attack state convictions until three years after entry of judgment on federal conviction). The duty to act with diligence usually occurs upon the entry of a judgment in the federal criminal proceeding. <u>Rossetti v. United States</u>, 773 F.3d 322, 332 (1st Cir. 2014) (barring action where petitioner failed to attack his state convictions until six years after entry of judgment on federal conviction).

Although Gomez ideally should have proceeded more expeditiously, the court finds that Gomez's 10 month delay between the entry of final judgment in the criminal proceeding and seeking vacatur of his state convictions on August 8, 2016, meets Gomez's due diligence obligations. In addition, Gomez's case was caught up in the unique circumstances created by Dookhan's misconduct that led to hundreds of convictions being vacated and which altered the normal considerations that Gomez and his attorney would otherwise take into account when determining whether to seek vacatur. See generally United States v. Hampton, 109 F.Supp. 3d 431, 435-36 (D. Mass. 2015) (collecting cases). The court finds Gomez's habeas petition is timely. 28 U.S.C. § 2255(f)(4).

### B. Merits

Under 28 U.S.C. § 2255, a prisoner in custody may claim the right to be released by claiming the sentence imposed violates the Constitution or the laws of the United States. 28 U.S.C. § 2255(a). The right to effective assistance of counsel is enshrined in the Constitution and can be a basis for such a challenge. U.S. Const. amend. VI; Rivera-Rivera v. United States, 827 F.3d 184, 186-87 (1st Cir. 2016). In light of the appeal waiver in his plea agreement, this is Gomez's only claim for relief.

In order to prove a constitutional violation due to the ineffective assistance of counsel, a petitioner must show that 1) his counsel's representation was deficient under an objective standard of reasonableness and 2) but for counsel's unprofessional errors, there is a reasonable probability that "the result of the proceeding would have been different." Strickland v. Washington, 466 U.S. 668, 687-88 (1984); Gonzalez-Soberal v. United States, 244 F.3d 277-78 (1st Cir. 2001). The court operates under the "strong presumption that counsel's conduct falls within the range of reasonable professional assistance." Strickland, 466 U.S. at 689. In cases

where a defendant is challenging a guilty plea, the court must decide whether the ineffective

assistance of counsel affected the outcome of the plea. Lopez-Nieves v. United States, 917 F.2d

645, 648 (1st Cir. 1990) (citing Hill v. Lockhart, 474 U.S. 52, 56, 59 (1985)). The petitioner must

show that the errors were the but for causation for pleading guilty. Id.

Gomez is unable to sustain his petition under either prong of Strickland. Gomez was

represented by an attorney in his criminal case prior to pleading guilty. See Hanye Aff. ¶ 1

[#122]. His attorney appropriately considered Gomez's prior convictions under the Sentencing

Guidelines and the Career Offender guidelines under USSG. § 4B1.1. Id. ¶¶ 2-7. An investigator

in the attorney's office sought additional records related to Gomez's case and the Dookhan

misconduct and Gomez's attorney discussed the findings with him. Id. at ¶¶ 9, 12-13. Counsel

also discussed with Gomez the possibility of declining a plea agreement while seeking a

continuance to the federal trial in order to vacate the state convictions tainted by Dookhan,

sharing his concerns about the likelihood of success on such a strategy and the possibility that

declining the plea agreement or seeking a continuance might in fact result in a worse plea

agreement with the District Attorney. Id. ¶¶ 14-15, 19-21, 25-27. All of the advice appears

reasonable based on the information known at the time.

In hindsight, it appears to have been a surprise that the District Attorney agreed to vacate

not just the convictions tainted by Dookhan's misconduct, but all of the convictions involved in

Gomez's package plea agreement in a deal to avoid repaying forfeiture funds. However,

reasonableness is not assessed with hindsight but based on "what the lawyer knew, or should

have known, at the time his tactical choices were made and implemented." United States v.

Natanel, 938 F.2d 302, 309 (1st Cir. 1991). Thus, on the record in front of the court looking at

the information that Gomez's counsel had at the time of the guilty plea agreement, Gomez's counsel did not provide ineffective assistance of counsel.

Gomez also has not demonstrated prejudice from the alleged ineffective assistance of counsel. Under Strickland in the context of a guilty plea, the second prong hinges on a showing that there is a reasonable probability that, but for the misconduct, the petitioner "would not have pleaded guilty and would have insisted on going to trial." Lopez-Nieves, 917 F.2d at 648 (quoting Hill, 474 U.S. at 59). Here, Gomez does not even contend that he would have insisted on going to trial.

Gomez argues instead that if his counsel had succeeded in vacating his 2007 conviction, his guideline sentence would have been 77 to 96 months and he would not have entered into a plea agreement that resulted in a sentence in that range. Petitioner's Opp'n to Hanye Affidavit [#124]. But this argument incorrectly assumes that counsel could have vacated the 2007 state convictions before Gomez had to decide between a plea and trial. While a challenge to the state convictions may have provided a ground to delay sentencing, it would not have provided a basis for delaying trial. Accordingly, Gomez would have had to go to trial or plead guilty to the offense without a plea agreement before seeking to delay sentencing in order to try to vacate the 2007 state conviction.

Finally, there must also be a showing that the petitioner was harmed by the misconduct resulting in a longer sentence than he would have received had his counsel acted properly. Strickland, 466 U.S. at 698-700. Gomez is unable to make this showing where the court accepted the parties' agreed-upon sentence of 87 months in prison (a sentence of less than half of the 188 to 235 months guideline sentencing that applied to Gomez according to his PSR), specifically rejecting the higher guideline range based on the Career Offender enhancement. See Hr'g Tr.

(Sept. 24, 2015) at 16:20-17:9 [#108]; Statement of Reasons [#81] at 9. As the court did not

apply the Career Offender enhancement, the vacatur of convictions that factored into the Career

Offender enhancement would not have affected the sentencing.

As a result, Gomez can show no prejudice in sentencing based on the inclusion of his

state convictions in his criminal history calculation.

IV.    Motion for Reconsideration for Appointment of Counsel [#133]

Gomez requests that counsel be appointed to assist him in pursuing his § 2255 petition.

"A convicted criminal has no constitutional right to counsel with respect to habeas proceedings."

Ellis v. United States, 313 F.3d 636, 652 (1st Cir. 2002). However, the court does have discretion

to appoint counsel for an indigent litigant in "exceptional circumstances." Cookish v.

Cunningham, 787 F.2d 1, 2 (1st Cir. 1986). Courts have considered factors such as "the

indigent's ability to conduct whatever factual investigation is necessary to support his or her

claim, the complexity of the factual and legal issues involved, and the capability of the indigent

litigant to present the case." Id. at 3 (internal citations omitted).

Here, Gomez's case is not factually or legally complex. Details of the state court

proceeding have been provided to the court through an affidavit of the Assistant District

Attorney, Sweeney Aff. [#123-1], to which Gomez has expressed no disagreement. The details

of Gomez's interaction with his counsel have been set forth by an affidavit of his counsel, to

which Gomez was able to clearly respond. Petitioner's Opp'n to Hanye Aff. [#124].

Accordingly, the record was sufficient for the court to determine whether Gomez was deprived

of effective assistance of counsel.

V.      Conclusion

Accordingly, for the foregoing reasons, Gomez's Motion to Amend the PSR and to Appoint Counsel [#106], Motion to Vacate [#110] and Motion for Reconsideration for Appointment of Counsel [#133] are DENIED.

IT IS SO ORDERED.

Date: April 21, 2020                                          /s/   Indira Talwani
                                                             United States District Judge